IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATHRYN A. TAYLOR,                )
                                  )
                    Plaintiff,    )
                                  )
v.                                )         Case No. 15-9718-JTM
                                  )
HY-VEE, INC.,                     )
                                  )
                    Defendant.    )

## ORDER

This is an employment-discrimination case in which the plaintiff, Kathryn A. Taylor,
alleges the defendant, Hy-Vee, Inc., terminated her employment as a pharmacy manager
because of her age and gender.  Plaintiff has filed a motion (ECF No. 48) asking the court
to compel defendant to produce two types of documents: (1) so-called "incident reports" that
defendant is withholding under an assertion of privilege created by the federal Patient Safety
and Quality Improvement Act ("PSQIA"), 42 U.S.C. §§ 299b-21, *et seq.*, and/or the Kansas
Pharmacy Act's Continuous Quality Improvement Program ("CQI"), K.S.A. § 65-1695; and
(2) documents reflecting the return of prescription medications which defendant is
withholding as unduly burdensome to identify.  For the reasons stated below, the motion is
denied with respect to the incident reports and granted with respect to the prescription return
information.

Plaintiff began working for defendant as a pharmacist in 1997, and was the pharmacy manager at defendant's store in Olathe, Kansas, from 2006 until her termination in November 2014.  Defendant asserts that it terminated plaintiff for non-discriminatory, business reasons.  Defendant states, for example, that plaintiff accepted the return of prescription drugs in violation of store policy and/or the law.  Defendant further contends that plaintiff made medication errors—releasing prescription drugs to wrong patients—because she did not use defendant's prescription verification process.  Plaintiff alleges that the reasons given by defendant for her termination are a pretext for age and/or gender discrimination.

Four document requests are at issue in the instant discovery motion.  In Request No. 15, plaintiff asked defendant to produce defendant's internal "incident reports," which defendant maintained in "error log books," documenting medication errors at the Olathe store where plaintiff was employed.  Similarly, in Request No. 16, plaintiff sought the error log books (including incident reports) for each pharmacy supervised by the regional pharmacy manager who participated in defendant's investigation of plaintiff's work performance. Request No. 17 sought documents reflecting the return of prescription drugs at the Olathe store.  Finally, Request No. 18 sought documents reflecting prescription drug returns at each of defendant's pharmacies in the Kansas City metropolitan area.  Plaintiff asserts that the information sought through these document requests is highly relevant to demonstrate the pretextual nature of defendant's reasons for terminating plaintiff because they could show

that younger pharmacists were not investigated or disciplined for making the same mistakes purportedly made by plaintiff.

<u>Request Nos. 15 and 16: Incident Reports/Error Log Books</u>

In its original responses to Request Nos. 15 and 16 seeking error log books containing incident reports, defendant asserted the statutory privilege for patient safety work product created by the PSQIA.  Later, on the day it filed its opposition to the instant motion, defendant served a supplemental response further asserting privilege under the CQI.  As the party asserting privilege, defendant bears the burden of demonstrating privilege applies.[1]

In 2005, Congress enacted the PSQIA in an attempt to limit the medical-malpractice exposure of healthcare providers who attempt to learn from their mistakes as part of a patient-safety-evaluation system.[2]  The PSQIA creates a privilege for all documents, communications, and other information that meet the statutory definition of "patient safety work product."[3]  The statute provides, in relevant part:

> Notwithstanding any other provision of Federal, State, or local law, . . . patient safety work product shall be privileged and shall not be —
>
> (1) Subject to a Federal, State, or local civil, criminal, or administrative subpoena or order, including in a Federal, State, or local civil or administrative disciplinary proceeding against a provider; [or]

---

[1]*See Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

[2]*See Tinal v. Norton Healthcare, Inc.*, No. 3:11-cv-596-S, 2014 WL 12581760, at *5 (W.D. Ky. July 14, 2014) (citing S.R. No. 108-196 (2003) and H.R. No. 108-28 (2003)).

[3]42 U.S.C. § 299b–22(a).

> (2)  Subject to discovery in connection with a Federal, State, or local civil, criminal, or administrative proceeding, including in a Federal, State, or local civil or administrative disciplinary proceeding against a provider.[4]

Information that does not meet the definition of "patient safety work product" is not privileged under the PSQIA, and the parties do not dispute that point.  Instead, the parties disagree as to whether the incident reports are the type of document that may be considered "patient safety work product" under the statute.  Resolution of the parties' dispute, then, turns on what qualifies as patient safety work product.

The PSQIA defines "patient safety work product," in relevant part, as

> any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements—
>
> (I) which—
>
>> (I) are assembled or developed by a provider for reporting to a patient safety organization ["PSO"][5] and are reported to a [PSO]; . . .
>
> and which could result in improved patient safety, healthcare quality, or healthcare outcomes; or
>
> (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.[6]

---

[4]*Id.*

[5]A PSO is a private or public entity or component thereof that is listed by the Secretary of Health and Human Services as a qualifying entity.  42 U.S.C. § 299b–21(4).

[6]42 U.S.C. § 299b–21(7)(A).  A "patient safety evaluation system" is "the collection, management, or analysis of information for reporting to or by a [PSO]."  42 U.S.C. § 299b–21(6).

"While the PSQIA announces broad evidentiary protections for patient safety work product, its drafters made clear that the statue was not intended to provide a blanket protection for all information and communications generated for quality control purposes."[7] The text of the PSQIA emphasizes that only information specifically made or gathered for a PSO or a patient safety evaluation system is patient safety work product.[8]  The statute elaborates that patient safety work product "does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system.  Such separate information or a copy thereof reported to a [PSO] shall not by reason of its reporting be considered patient safety work product."[9]  In other words, "Information generated or assembled for some other purpose, even if the information relates to quality improvement measures, is not considered patient safety work product."[10]

Defendant states that it "has contracted with the Alliance for Patient Medication Safety ("APMS") to be [defendant's] [PSO]."[11]   According to defendant, pharmacy

---

[7]*Johnson v. Cook Cty.*, No. 15 C 742, 2015 WL 5144365, at *6 (N.D. Ill. Aug. 31, 2015) (citing S.R. No. 108–196, at 2 (2003) (explaining the protections apply only to "certain categories of documents and communications termed 'patient safety work product' that are developed in connection with newly created patient safety organizations")).

[8]42 U.S.C. § 299b–21(7)(A).

[9]42 U.S.C. § 299b–21(7)(B)(ii).

[10]*Johnson*, 2015 WL 5144365, at *7 (citing 42 U.S.C. § 299–b21(7)(B)).

[11]ECF No. 51 at 2.  Plaintiff does not dispute that defendant uses APMS or that APMS is a certified PSO.

employees complete "forms" that identify "errors."[12]  Then a designated pharmacy employee

"enters the data from [the] forms" into a software program provided by APMS called

Pharmacy Quality Commitment ("PQC").[13]   In addition, because the Kansas CQI law

requires pharmacies to maintain a record of medication errors, the Olathe pharmacy location

where plaintiff was employed records errors "on incident reports that are maintained in a 3-

ring binder ("Error Log Book")."[14]  Defendant states that the Error Log Book "was created

for the express purpose of complying with" the CQI,[15] but that the errors listed on the

incident reports therein "are also reported on PQC" to APMS.[16]  In addition, the errors listed

on the incident reports are reported on defendant's internal record-keeping website called Hy-

Vee Connect.[17]   Defendant takes the position that "data entered into PQC," which would

include data on the incident reports kept in error log books, "is data assembled for reporting

---

[12]ECF No. 51 at 3.

[13]*Id.*

[14]The court is unable to determine whether the "forms" defendant first referenced are separate and distinct from the "incident reports" defendant later discussed.  The deposition transcript of Karey Newton implies that they are one in the same.  *See* ECF No. 51-3 at 3. On the other hand, the declaration of Matt Vogt states that the forms and incident reports are separate, and that while all errors are reported on forms, only certain types of errors are also reported on incident reports.  ECF No. 51-5 at 1.  Ultimately, the court need not resolve this question.

[15]ECF No. 51 at 4.

[16]*Id.* at 3.  *See also* Declaration of Marshall Sanders, ECF No. 51-2 at 2 ("Hy-Vee's retail pharmacies are required to log all errors that occur in the Pharmacy into a program called PQC.").

[17]ECF No. 51 at 3.

to a PSO and in fact reported [sic] to a PSO," such that it is privileged "patient safety work product."[18]

Plaintiff argues that, for two reasons, defendant has failed to satisfy its burden of establishing the incident reports are privileged under the PSQIA.[19]  First, plaintiff argues defendant has not demonstrated that information in the log books/incident reports sought in Request Nos. 15 and 16 for years 2011–2015[20] was reported to a PSO because defendant's response discusses PSO reporting in "present tense language."[21]  The court easily rejects this hypertechnical grammar argument.  Defendant has submitted the deposition testimony of Karey Newton, in which Ms. Newton stated that it has been her responsibility (given to her by plaintiff, incidently) since "late 2008 or early 2009" to input data from incident forms into the PQC database.[22]

Plaintiff's second argument warrants more consideration.  Plaintiff asserts that "even if the PSQIA protects specific entries into the PQC system, it does not protect the underlying incident reports or similar information that is maintained in defendant's error logs,

---

[18]*Id.* at 6.

[19]In her reply, plaintiff also briefly mentioned that defendant has failed to provide a privilege log for the withheld documents.  Given that this argument was raised for the first time in the reply brief and has not been developed by plaintiff, the court does not consider it.

[20]Request No. 16 covered years 2011–2015, but plaintiff's motion limited the request to years 2014–2015.  ECF No. 48 at 11.

[21]ECF No. 52 at 8.

[22]ECF No. 51-3 at 3.

notebooks, or Hy-Vee Connect."[23]  Plaintiff contends that because the error log books and incident reports "exist separately from the PQC" they are not privileged under the PSQIA. Plaintiff notes that the Error Log Book kept at the Olathe pharmacy is kept, according to defendant, to comply with the Kansas CQI law.

Although this argument presents a close question, it must be denied.  The evidence in the record makes clear that all the data on the incident reports is gathered for reporting to a PSO and that it then was reported to a PSO when Ms. Newton entered it into PQC.  It is true that the incident reports were then saved by defendant in the Error Log Book to comply with Kansas law requiring pharmacies to maintain records of medication errors.  It is also true that at least some of the information was logged into Hy-Vee Connect.  But what a pharmacy ultimately does with data collected and reported to a PSO is not relevant.  Such data is designated "patient safety work product"  by 42 U.S.C. § 299b–21(7)(A), and there is nothing in the PSQIA to suggest that data can lose that designation.  Of course, data that exists or that a pharmacy collects or maintains "separately . . . from a patient safety evaluation system," i.e., separately from a system for the collection and management of data for reporting to a PSO,[24] is not "patient safety work product" in the first instance.[25]  But here, unlike in the *Johnson* case upon which plaintiff relies, the data in the incident reports was not

---

[23]ECF No. 52 at 8.

[24]42 U.S.C. § 299b–21(6) (defining "patient safety evaluation system").

[25]42 U.S.C. § 299b–21(7)(B)(ii).

"generated or assembled for some other purpose."[26]  The data exists as part of defendant's system for reporting it to APMS.  Although it also is *used* as part of defendant's internal and state-mandated quality improvement system, the court is satisfied that defendant has met its burden of demonstrating that the data was *developed* for reporting to a PSO.  Thus, the court finds the information protected by the PSQIA privilege and properly withheld on that basis.[27]

As mentioned above, defendant served supplemental responses to Request Nos. 15 and 16 on December 5, 2016 (the day on which it filed its response to the instant motion), objecting to the requests as seeking information privileged under the CQI.  Because the court has found the incident reports privileged under the PSQIA, it need not determine the applicability of the CQI privilege.  The court notes, however, that it does not take a favorable view of this new objection.  Setting aside the fact that the objection appears to be significantly late,[28] the court would hold that state privilege law does not govern discovery in this case involving federal causes of action.[29]

---

[26]*Johnson*, 2015 WL 5144365, at *7.

[27]As a side note, plaintiff has not argued that the PSQIA privilege does not apply outside of the medical-malpractice context, nor does she take issue with cases cited by defendant holding otherwise.  *See, e.g., Tinal*, 2014 WL 12581760, at *9–10 ("In the absence of any explicit exception to the plain language of subsection (a) and (b) [of 42 U.S.C. § 299b-22] for federal civil rights actions, it is clear to the Court that the privilege created for patient safety work product is intended to apply across-the-board to all other types of claims.").

[28]*See* ECF No. 34 (Certificate of Service of Plaintiff's Second Requests for Production dated September 14, 2016).

[29]*See Lopez-Aguirre v. Bd. of Cty. Comm'rs*, No. 12-2752, 2013 WL 6796459, at *2–3 (D. Kan. Dec. 20, 2013) ("[T]he Court holds that evidence relating only to Plaintiff's federal claims will not be subject to assertions of the Kansas statutory peer review privilege, . . . as

<u>Request Nos. 17 and 18: Prescription Drug Returns</u>[30]

As noted above, Request No. 17 sought documents reflecting the return of prescription drugs at the Olathe store.  In her motion, plaintiff agreed to limit this request to "return transactions with a dollar value of $25 [or more] *or* that were documented in an Incident Report or otherwise documented via Connect or PQC or error notebook."[31]  Request No. 18 sought documents reflecting prescription drug returns at each of defendant's pharmacies in the Kansas City metropolitan area.  In her motion, plaintiff agreed to limit this requests to return transactions with "a threshold of $100 *or* that were documented in an Incident Report or otherwise documented via Connect or PQC or an error notebook."[32]  Both requests are temporally limited to the years 2014 and 2015.

Defendant objected to these requests as unduly burdensome, asserting that the effort involved in complying with the requests "is highly disproportionate to the needs of the

---

no such privilege has been recognized by the Tenth Circuit or U.S. Supreme Court."); *Dunn v. Dunn*, 163 F. Supp. 3d 1196 (N.D. Ala. 2016) (ruling that privilege created by state quality-assurance law "has no direct bearing" because the claims were brought under federal law); *Johnson*, 2015 WL 5144365, at *3 (ruling the court was not obligated to apply a privilege created by state statute because the case was based on a federal cause of action).

[30]In her reply brief, plaintiff asked the court to "defer ruling with respect to Document Request Nos. 17 and 18 pending an opportunity for [plaintiff's counsel] to receive and analyze the documents requested in Document Request Nos. 15 and 16." ECF No. 52 at 13–14.  Because the court has denied plaintiff's motion to compel with respect to Request Nos. 15 and 16, the court moves on to deciding the discovery dispute involving Document Request Nos. 17 and 18.

[31]ECF No. 48 at 14 (emphasis in original).

[32]*Id.* at 16 (emphasis in original).

case."[33]   Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   Whether any particular discovery request is proportional is to be determined by considering, to the extent applicable, the following six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[34]

Plaintiff asserts that the information regarding prescription drug returns is highly relevant, and the court agrees.   Particularly at the discovery stage, relevance is broadly construed.[35]   "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant.[36]   Defendant has stated that plaintiff's employment was terminated in large part because she "accepted the

---

[33]ECF No. 51 at 11.

[34]Fed. R. Civ. P. 26(b)(1).

[35]*See Erickson, Kernell, Deruseau, & Kleypas v. Sprint Sols., Inc*., No. 16-mc-212-JWL-GEB, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016).

[36]*Rowan v. Sunflower Electric Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and ruling the *Oppenheimer* standard still relevant after the 2015 Amendment to Rule 26(b)(1)). *See also Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action.") (internal quotations and citation omitted).

return of prescription drugs in situations where store procedures and/or the law did not allow."[37]  Plaintiff contends this is a pretext for discrimination and seeks information to show that other employees allowed prescription returns and they were not "disciplined, much less terminated."[38]  Information about the prescription returns is in defendant's possession, and plaintiff does not have access to it.  Although plaintiff attempted to gather information about prescription returns though depositions of pharmacy employees, the testimony from these witness on the subject has been inconsistent.

On the other side of the scale is the burden that defendant would face in responding to these document requests as they have been limited by plaintiff.  As the party objecting to discovery, defendant has "the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[39]  This imposes an obligation on defendant "to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents."[40]  A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding

---

[37]ECF No. 51 at 2.

[38]ECF No. 48 at 15.

[39]*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (citing *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991)).

[40] *Id.*

to the discovery request.[41]   Discovery will be allowed unless the hardship imposed on the responding party is unreasonable compared to the benefits to be secured from the discovery.[42]

Defendant has submitted the declaration of James Harrison, Hy-Vee, Inc.'s Point of Sale Director, to support its burdensome objection, at least as to Request No. 17.[43]   Mr. Harrison states that to determine whether returns at the Olathe pharmacy registers were returns of prescription drugs, defendant must

> (1) Determine the name of the transaction log file; (2) Restore the transaction log file to the system; (3) Open and review the transaction electronic journal; (4) Check the raw transaction log for a name associated with a payment card; (5) If the card was swiped, there is usually a name associated with the card, but if the card was keyed, then additional research must be done in an attempt to find a purchase with a card with the same numbers.[44]

If a cardholder is located, defendant "can look in the EnterpriseRx system to try to tie the sale/refund to a prescription. If that is possible, then there may be additional documents illustrating what occurred."[45]   Mr. Harrison states that if the refund was given in cash,

---

[41]*Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004), *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (objecting party cannot sustain burden with boilerplate claims that requested discovery is burdensome), and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling objection of undue burden based in part on lack of affidavit or other proof)).

[42]*McBride v. Medicalodges, Inc.*, Nos. 06-2535, 06-2536, 06-2538, 2008 WL 1958350, at *4 (D. Kan. May 2, 2008).

[43]ECF No. 51-7.

[44]*Id.* at 1-2.

[45]*Id.* at 2.

defendant does not have the ability to learn more information about the transaction.  Mr. Harrison estimates that "it would take hundreds of hours" to perform these steps and analyze the 130 return transactions reflecting refunds of $25 or more responsive to Request No. 17.[46] When he limited his analysis to refunds of $100 or more, there were 12 return transactions that took employees 15 hours to analyze (an average of 1.25 hours per transaction).[47]  Using 1.25 hours as the average analysis time and multiplying that by 130 return transactions, the court estimates that it would take defendant 162.5 hours to respond to Request No. 17.

The court finds that defendant has not carried its burden of demonstrating that the time or expense of responding to Request No. 17 outweighs the likely benefit of the information to plaintiff.  Defendant has not provided sufficient detail about the nature of its asserted burden.  For example, defendant has not estimated the costs involved.  There is no indication in Mr. Harrison's declaration that an employee with a salary on the lower end of the pay-scale could not perform the analysis at relatively minimal cost to defendant, even if the employee spent, say, 200 hours on the task.  The steps necessary to locate the requested information, as set forth by Mr. Harrison, do not appear to be difficult.  When the court weighs the limited explanation of burden defendant has provided against the highly relevant nature of the requested information—information that goes to the heart of this case and is not available from other sources—the court concludes Rule 26(b)(1) entitles plaintiff to obtain the information sought in Request No. 17.

------

[46]*Id.*

[47]*Id.*

With respect to Request No. 18, seeking information about prescription returns meeting or exceeding $100 at any of defendant's pharmacies in the Kansas City metropolitan area, defendant has provided no specific support for its unduly burdensome objection. Defendant states in its response brief that, given "the amount of time it has taken to review the transactions at Olathe 2, Hy-Vee estimates that reviewing transactions that involve $100 or more in all 25 Kansas City stores would likely require close to 1000 hours of time."[48] But defendant has offered no declaration, affidavit, or other evidence or explanation to support this conclusory allegation.  Defendant has not suggested how many return transactions amounting in refunds of $100 or more were processed by defendant's pharmacies in the Kansas City metropolitan area in 2014 and 2015.  Nor has defendant explained the type of employee necessary to analyze such transactions and at what cost.  Although return information from stores where plaintiff did not work is less consequential than the information sought by Request No. 17, it is nonetheless relevant as bearing on issues in this case.  Given the absence of a record showing defendant would be unduly burdened by responding to Request No. 18, the court holds the information is discoverable.

IT IS THEREFORE ORDERED:  Plaintiff's motion to compel is denied with respect to Request Nos. 15 and 16, and is granted with respect to Request Nos. 17 and 18.

Dated December 22, 2016, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara

---

[48]ECF No. 51 at 11.

U.S. Magistrate Judge